# Henry Shenk, Appellant, *v.* John D. McKennan, Wm. B. Edwards and David G. Stewart, trustees of the Pittsfield Club, an unincorporated association.

*Constitutional law—Statutes—Building law of 1895, sec. 8, valid.*

The last clause of section 8 of the building law of June 7, 1895, P. L. 135, is constitutional; it is germane to the general enactment; it is part of and an incident to a system, or set of regulations relating to a subject within the appropriate range of municipal control.

Argued April 24, 1899. Appeal, No. 147, April T., 1899, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1897, No. 534, on verdict for defendants. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by W. W. PORTER, J. RICE, P. J., and ORLADY, J., dissent.

Assumpsit. Before McCLUNG, J.

It appears from the evidence that the plaintiff and defendants entered into a contract whereby the plaintiff agreed to do certain excavation and stone work necessary to build the westerly wall of the defendants down to the depth of the foundations of a new building to be erected by the Lincoln Hotel Company, and to do the necessary shoring and bracing for the sum of $760 subject to the qualification and " to the extent that the Club may be legally liable therefor and with the distinct understanding, however, that if under the building law the Club is not liable for the payment of this work, then you seek payment therefor elsewhere than from the Club." The work was done

and upon suit being brought the defendants denied liability because it appeared in the evidence that the Lincoln Company in erecting its superstructure excavated certain pier holes at various places on its property below a depth of fifteen feet from the Penn avenue curb, which holes were filled up with concrete for the purpose of making a firm foundation for the steel superstructure.

The court directed a verdict for the defendants and the motion being made for a new trial the same was refused in the following opinion by McClung, J.:

Upon the argument of this motion it was alleged by counsel for plaintiff that the 8th section of the Act of June 7, 1895, P. L. 135, is unconstitutional because special legislation.

The act is entitled, "An act regulating the construction, maintenance, alteration and inspection of buildings and party walls in cities of the second class," and the provisions of the 8th section are within this title.

It is admitted that classification of cities is not forbidden by the constitution, and that legislation for a class is not special legislation: Wheeler v. Philadelphia, 77 Pa. 338.

But it is argued that this does not authorize legislation for a class as to matters not under municipal control nor affecting the municipal government, Wyoming St., Pittsburgh, 137 Pa. 494, and that the 8th section of this act relates to such excluded matters.

The act in question is plainly a "building inspector" act, and if we examine the case of Wheeler v. Philadelphia, we will find that the Supreme Court in explaining and illustrating the nature of municipal laws, the securing of which makes proper and necessary classification and legislation for classes, mentions, inter alia, "laws in regard to building inspectors." See opinion of Paxson, J., in Wheeler v. Phila., 77 Pa. 338. Such matters are undoubtedly proper subjects of municipal control, and have, as Judge Paxson says, always been recognized as such.

It may be that many portions of this act or any such act would apply with propriety to cities of the first class, as well as to cities of the second class. But this is not the test. If it is allowable to classify for such purposes, then the legislature can certainly pass a complete act for each class.

The courts will not revise the judgment of the legislature when legally and fairly exercised.

The acts stricken down in Ayars's Appeal, 122 Pa. 266, were not declared unconstitutional simply because the classification was an injudicious one, but because the purpose of the acts was an evasion of the constitutional provision with respect to local and special legislation. We are of opinion that this section of the act is not unconstitutional.

Upon the merits of the case we can add nothing to what was said upon the trial. Under the admitted facts and the written contract between the parties, plaintiff was bound to look elsewhere than to defendants for his compensation.

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned* was in directing a verdict for defendants.

*Wm. M. Hall, Jr.,* for appellant.—The learned trial judge ruled that because of the Act of June 7, 1895, P. L. 135, sec. 8, the plaintiff could not recover, because the contract provided " that if under the building law the Club is not liable for the payment for this work, then you seek payment elsewhere than from the Club."

As to the first position, that the act of 1895 has no application : The act is a police measure. Before its passage the law was that the right of lateral support was confined to the land in its natural state, and not to the buildings thereon. An owner who proposed to build could do so without protecting his neighbor's wall or building in any way except to give the neighbor timely notice to protect his own : Thurston v. Hancock, 4 Sharswood & Budd's Leading Cases in Real Property, 252, 266 ; Dunlap v. Wallingford, 1 Pitts. 127.

As to the second position, that even if the act did apply, the court misconstrued its meaning : The evidence showed that the plans of the Lincoln Company did not call for an excavation fifteen feet below the curb line. After the defendants' wall had been built according to the contract, the Lincoln Company sunk at various places what are called " pier holes," and at once filled them with concrete to make a firm foundation for steel.

Some of these holes were more than fifteen feet below the curb level, but they were not under the defendants' wall, had

no effect on it, and in no way made it necessary to protect or underpin it.

Our third position is that the 8th section is unconstitutional in so far as that it attempts to enact that "should the owner or owners (of real estate in cities of the second class) desire to excavate to a greater depth than fifteen feet, he or they shall protect, and if necessary underpin the wall of any adjoining structure at his or their own expense."

We submit therefore that the section thus far is in violation of section 7, article 3 of the constitution, providing, inter alia, "The general assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs or school districts : " Frost v. Cherry, 122 Pa. 417 ; Phila. v. Haddington Church, 115 Pa. 291 ; Scranton v. Silkman, 113 Pa. 191 ; School District's Appeal, 113 Pa. 176 ; Weinman v. Railway Co., 118 Pa. 192 ; Ayars's Appeal, 122 Pa. 266.

All legislation not relating to the exercise of corporate powers, or to corporate officers and their powers and duties, is unauthorized by classification : Ruan St., 132 Pa. 257 ; Wyoming St., 137 Pa. 494 ; Pittsburg's Petition, 138 Pa. 401 ; Scranton v. Whyte, 148 Pa. 419.

The Act of March 22, 1877, P. L. 16, sec. 2, in re lien of claims for overdue water rents in cities of second class, is unconstitutional : Trust Co. v. Fricke, 152 Pa. 231.

In passing on an act providing for lien and collection of taxes in a certain class of cities and in boroughs, etc., see Van Loon v. Engle, 171 Pa. 157.

An act regulating the affairs of school districts in cities of the second class, is unconstitutional : Chalfant v. Edwards, 173 Pa. 246.

*W. K. Shiras*, with him *George W. Guthrie*, for appellees.

OPINION BY WILLIAM W. PORTER, J., July 28, 1899 :

The plaintiff's claim is founded upon the letter of August 7, 1896, by which the defendant club accepted the plaintiff's proposition to rebuild the westerly wall of the club house for $750 "including all shoring and bracing that may be required, to the extent that the club may be legally liable therefor, and with the distinct understanding however that if under the building

law the club is not liable for the payment for this work, then you seek payment therefor elsewhere than from the club."

The work was done. The defendant now claims that under the law it is not liable. Section 8 of the act of June 7, 1895, provides that the owners of the building to be underpinned are chargeable with the cost of the work when the excavation for the foundation of the new building is fifteen feet (or less) in depth but "should any owner or owners desire to excavate to a greater depth than fifteen feet he or they shall protect and if necessary underpin the wall of any adjoining structure at his or their own expense." The testimony shows that the excavation for a considerable part of the foundation for the new building exceeded fifteen feet. The defendant therefore claims that under the terms of the contract and the provisions of the act, he is not liable to the plaintiff.

To this the plaintiff answers that the last clause of section 8 of the act of June 7, 1895, offends against section 7 of article 3 of the constitution which provides, inter alia, that "the General Assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs, or school districts." The act of June 7, 1895 (of which section 8 is a part), provides a system of building inspection and regulations for building construction for cities of the second class. Legislation for a class of cities is general and valid, when it relates to some municipal purpose. If it does not affect the exercise of some municipal power or the number, character, powers and duties of the municipal officers or the regulation of some subject within the appropriate range of municipal control, the legislation is local and unconstitutional: Van Loon v. Engle, 171 Pa. 157; Ruan Street, 132 Pa. 257; Ayars's Appeal, 122 Pa. 266. It is unnecessary to refer specifically to the many provisions of the act of 1895. The scope and purpose of the act is to place the construction of buildings in cities of the second class under the supervision and control of municipal officers for the purpose, not of determining or affecting the rights of particular property owners, but that building shall be pursued according to certain general rules to the end that the city may be improved by regularity, safety and symmetry of construction and that the citizens may be protected from the perils of unsafe or improper construction. The act, therefore, as a whole affects

the exercise of municipal power; the number, character, power and duties of certain municipal officers, and the regulation of a subject-matter within the appropriate range of municipal control. The act speaking generally is therefore constitutional and indeed in Wheeler v. Philadelphia, 77 Pa. 338, Mr. Justice PAXSON uses as an instance of what matters may be made the subjects of legislation for cities as a class "the laws in regard to building inspectors and Mr. Chief Justice STERRETT in Cunningham v. Church, 159 Pa. 620, speaks of building inspectors as being "officers of the city invested to a certain extent with the police power of the state." This much need be said in view of the following discussion. The act as a whole is not attacked on the ground of unconstitutionality but only the last clause of section 8 of the act, which is said to be unconstitutional because in case of excavation more than fifteen feet below the curb line, the building inspector would have no right to interfere and no duty to perform, and the effect of the law would be only to require builders in cities of the second class to protect and underpin an adjoining wall.

This reasoning is not sound. The last clause cannot be severed from the balance of the section. So severed it is insensible. Its purpose is not primarily to work the creation of a right or liability as between individuals. It is the creation of an obligation to the municipality enforceable by an officer thereof. The first clauses of the section provide for the performance of a duty by the owner of an adjoining property where the proposed excavation for a new building is fifteen feet or less. The bureau of building inspection intervene and require (not on behalf of the owner of the new building) but on behalf of the municipality that the adjoining owner properly protect his property and on failure to do so the municipal officer may order it to be done at the owner's expense. This is the course to be pursued "whenever the owner or owners of the property wish to excavate to a depth not exceeding fifteen feet." But "should any owner or owners desire to excavate to a greater depth than fifteen feet, he or they shall protect and if necessary underpin" at his or their own expense. It is claimed that this language creates a right as between the property owners and is therefore legislation relating to the property rights of property owners in one class of cities only and that the corporate powers and officers have no part in this case.

A reading of the whole clause indicates that the desire of the proposed builder as communicated to the bureau determines the course to be pursued. If the owner of the adjoining property is to be charged, it required the provisions of the first clauses of the section. If the owner of the proposed new building is to be charged, he is already in the control of the bureau by reason of his application for permission to build. The building permit is issued on performance of all the obligations imposed by the law.

The obligation of the last clause of section 8 enforceable by the municipal officers is primary. The right of the adjoining owner to protect himself is secondary.

A reference to section 5 of the act corroborates this view: " The Bureau of Building Inspection shall be furnished by the owner, contractor, or architect with a copy of the general drawings, plans and specifications of any proposed erections or alterations of buildings, which shall sufficiently show the character and extent thereof and the purpose of the builder to comply with the requirements of this act and the proper officer of said bureau shall grant permits for such erections or alterations when in conformity with the requirements of this act. . . . . The said bureau may require any applicant for a permit to give notice of the application to any persons whose property interests may be affected by the proposed work. No building shall be hereafter erected . . . . without a permit from the Bureau of Building Inspection, nor except when in conformity with the provisions of this act."

It will thus be seen that the municipal bureau of building inspection has the power and upon it is imposed the duty in the first instance, to enforce the provisions of the act. Upon a failure to abide by and carry out any decision of the bureau or of an inspector, by section 43 of the act, the court of common pleas, may, upon petition of the director of the department of public safety, issue a mandatory decree requiring compliance, and section 44 makes a violation of the provisions of the act subject to a penalty recoverable in the name of the city before a magistrate and payable into the treasury of the city.

The whole scope and purpose of the act must be had in contemplation in construing the clause under consideration. It is a provision germane to the general enactment. It is a part of

and an incident to, a system, or a set of regulations relating to a subject within the appropriate range of municipal control.

Holding these views we find no error committed by the court below and therefore the judgment is affirmed.

RICE, P. J., and ORLADY, J., dissent.