Carl *v.* Grand Union Company, Appellant.

Argued April 13, 1932.

Before TREX-
LER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE
and STADTFELD, JJ.

*Error assigned*, among others, was the direction of
the verdict for the plaintiff.

*Quincy D. Hastings*, for appellant.

*D. J. Skelly*, and with him *S. N. Mogilowitz*, for
appellee.

OPINION BY GAWTHROP, J., July 14, 1932:

This is an action in assumpsit to recover the sum
of $300 deposited by plaintiff with defendant five days
after he entered its employment as manager of one
of its stores, for the purpose of protecting and secur-
ing it against any shortage which might arise during
his employment as manager of any of defendant's
stores. At the time the money was deposited the par-
ties signed a paper containing as a heading the words
"cash bond receipt," which provided, inter alia, that
the deposit of $300 should be credited to plaintiff on
the books of defendant and should bear interest at
five per cent per annum; that the records of the store,
as kept by employees of defendant bearing on merch-

andise accounts, should be binding on both parties; and that upon the termination of plaintiff's employment "if there is no said shortage such sum as remains to the credit of the said E. C. Carl on the books shall belong to him and shall be paid to him on request." Plaintiff was employed as manager of various stores of defendant from October 17, 1928, to July, 1929, when he left defendant's employ and made demand upon it for the return of his deposit, and defendant refused to pay that sum or any part thereof. All of the above stated facts were averred in the statement of claim. It also contained an averment that during plaintiff's employment by defendant no shortage of merchandise occurred. The affidavit of defense admitted all of these averments, except the one that no shortage occurred. It averred that there was an actual shortage of $248 at the time plaintiff quit the employment of defendant, and that the shortage was shown by the accounts made by plaintiff to defendant.

At the trial the undenied averments of the statement of claim were admitted in evidence without objection. Defendant offered no evidence, but moved for a compulsory nonsuit on the ground that plaintiff failed to prove the averment in his statement of claim to the effect that there was no shortage in his account. When this motion was refused defendant moved that the court instruct the jury that the verdict must be for defendant, although it does not appear that any written point for binding instructions was presented. The trial judge directed a verdict for plaintiff. The record discloses also that on the fifth day after verdict counsel for defendant moved in open court for judgment n. o. v. The motion was refused and this appeal followed, no motion for a new trial having been made.

Appellant assigns for error (1) the refusal to grant a compulsory nonsuit; (2) the direction of a verdict

for plaintiff; and (3) the overruling of its motion for judgment n. o. v.

The refusal of the compulsory nonsuit is not assignable for error: Rose v. Scott, 75 Pa. Superior Ct. 196; Spencer v. Conrad, 44 Pa. Superior Ct. 489. Therefore, that assignment need not be considered.

A motion for judgment n. o. v. must be based on a written point submitted to the court at the trial requesting binding instructions: Standard Brewing Co. v. The Knapp Co., Inc., 79 Pa. Superior Ct. 252. As no such point was submitted the trial judge could not do otherwise than dismiss this motion: Ransberry v. Fulmer, 80 Pa. Superior Ct. 512.

The only valid assignment is that which complains of the action of the trial judge in directing a verdict for plaintiff. The opinion filed by the court below fully vindicates his action. The sole legal question raised and argued in the court below and in this court is whether plaintiff had the burden of proving the negative averment in his statement of claim that there was no shortage in his accounts. We adopt the following from the opinion of the court below: "By the terms of the receipt, the defendant became a depositee in the nature of a trustee, for the sum of three hundred ($300) dollars, which might be appropriated to the use of the defendant if certain conditions arose. That receipt provided that the records of the store, as kept by its employees, bearing on merchandise accounts should be binding on both parties, and that upon the termination of the employment, the money should be returned to the plaintiff, 'if there is no said shortage.' There was not here an ordinary situation of debtor and creditor. The defendant held the money upon a trust to return it at the end of the employment, unless there was a shortage. Before it could be determined whether or not there had been a shortage, it would be necessary to consider all the accounts in the stores in which the plaintiff was employed for

a period of more than one year. The plaintiff, asserting that there was no shortage, would have a very difficult proposition to show that there had not been any shortage as shown by the books at any time within a year, while it would be a comparatively simple undertaking for the defendant.'' The $300 was Carl's money and when he left defendant's employment the latter had the burden of proving its right to retain it. It had no right to keep it unless there was a shortage in plaintiff's accounts, and then only to the extent of the shortage. If there was a shortage that fact was peculiarly within defendant's knowledge.

The rule generally applied in such cases is thus stated in 10 R. C. L. 899, section 49: ''Where a negative is essential to the existence of a right, the party claiming the right has the burden of proving such negative—at least when the means of proving the fact are equally within the control of each party; but when the opposite party must, from the nature of the case, be in possession of full and plenary proof to disprove the negative averment, then he must adduce it, or it will be presumed that the fact does not exist. Where the presumption of law is in favor of the affirmative, as where the issue involves a charge of culpable omission, it is incumbent on the party making the charge to prove it, although he must prove a negative; for the other party shall be presumed innocent until proved to be guilty. It is one of the first principles of justice, not to presume that a person has acted illegally till the contrary is proved.'' See also 22 C. J. 81, section 24.

While it has been held that a party, whether plaintiff or defendant, asserting the affirmative of a question in dispute assumes the burden of proving it and that the rule is equally imperative whether the proof required be of affirmative or negative matter (Daley v. Iselin, 212 Pa. 279), this court, speaking through President Judge RICE in Com. v. Bates, 1 Pa. Superior Ct. 223,

233, said: "It is sometimes said that, when the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. This is a principle not unknown in criminal evidence, but it is not a rule of universal application, and we do not hold that it applies here. It is a rule, however, of very common application in criminal as well as in civil cases that where a party has the burden of proving a negative, and the subject-matter lies peculiarly within the knowledge of the opposite party, full proof is not required, but such as renders the existence of the negative probable is in some cases sufficient to change the burden." This principle has been adopted in cases in which one is indicted for selling liquor without a license or with practicing medicine without a license. In such cases the Commonwealth is not required to prove in the first instance that the defendant had no license. On this subject Mr. Wigmore states in Vol. 5, par. 2486, of his Treatise on Evidence that while "the burden is often on one who has a negative assertion to prove. . . . . . The truth is that there is not and cannot be any one general solvent for all cases. It is merely a question of policy and fairness, based on experience in different situations." Our conclusion is that under the circumstances of this case the burden was not on plaintiff to prove, in the first instance, the averment made by him that there was no shortage, but that the proofs offered called upon defendant to justify its action in holding the money by showing that its own books disclosed a shortage. The averment in the statement that there was no shortage in plaintiff's accounts was evidently introduced to rebut an anticipated defense. This averment need not have been made. It did not lie at the foundation of plaintiff's right of action. Therefore, he was not bound to prove it. See Hastings v. Speer, 34 Pa. Superior Ct. 478; Black v.

Isaacman, 44 Pa. Superior Ct. 476, and cases there cited. See also 49 C. J. 149, section 18, and 21 R. C. L. 489, section 48.

The judgment is affirmed.